CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 22, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 5:17-cr-00011 |
| v. | ) |
| | ) By:   Michael F. Urbanski |
| SHELDON BERRY, | ) Chief United States District Judge |
| Defendant-Petitioner | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendant Sheldon Berry's motion for a sentence reduction under Amendment 821 to the United States Sentencing Guidelines ("USSG" or "guidelines"). ECF No. 737. Berry filed his motion pro se and the Federal Public Defender filed a supplemental brief on his behalf. ECF No. 746. The government filed a brief opposing a sentence reduction, ECF No. 747, to which Berry replied. ECF No. 748. For the reasons stated below, the court **DENIES** Berry's motion for a sentence reduction under Amendment 821 to the guidelines.

### I. BACKGROUND

On May 2, 2017, Berry was charged in a multi-count, multi-defendant indictment with one count of conspiring to distribute a quantity of heroin, distributing a quantity of heroin resulting in serious bodily injury to another, and distributing 1000 grams or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(C) (Count One); and knowingly possessing a firearm in furtherance of a drug-trafficking crime for which he could be prosecuted in a court of the United States in violation of 18 U.S.C. § 924(c)(1) (Count Two). Indictment, ECF No. 3 at 1–3. On January 16, 2018, Berry entered into a non-binding plea agreement in which he pled guilty to an amended Count One of the indictment, conspiring to

distribute 1,000 grams or more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Plea Agreement, ECF No. 279.

Berry faced a statutory mandatory minimum sentence of 10 years and a maximum of life. Pre-Sentence Investigation Report (PSR), ECF No. 743 ¶ 61; 21 U.S.C. § 841(b)(1)(A). Because he was held responsible for between 30 and 90 kilograms of heroin, he had a base offense level of 36 increased by 2 levels for possession of a firearm, pursuant to USSG § 2D1.1(b)(1), and decreased by 3 levels for acceptance of responsibility, leaving him with a total offense level of 35. PSR, ECF No. 743 ¶¶ 34–42. Berry received zero criminal history points, giving him a criminal history category of I. Id. ¶ 46. His criminal history category together with his total offense level resulted in a sentencing range of 168 to 210 months. Id. ¶ 62; Tr. of Sent. Hr'g, ECF No. 462 at 6–7. On May 2, 2018, Berry was sentenced to a term of 168 months, to be followed by a 5-year term of supervised release. J., ECF No. 423. Berry is incarcerated at Federal Correctional Institution Loretto and has a projected release date of August 26, 2028.[1]

According to the PSR, Berry's residence was searched pursuant to a warrant. After Berry advised that the lived in the middle bedroom of the residence, officers discovered a digital scale with residue, a Bushmaster XM115 rifle, .22 caliber magazine/ammunition, a Highpoint .45 caliber handgun with magazine, a Remington model 7400 30.06 rifle, a Marlin model 336CS 30/30 rifle, a Ruger old navy black powder revolver, a bullet-proof vest, multiple rounds of ammunition, and a clear plastic bag containing heroin. Berry advised that there were

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Sheldon Berry") (last viewed June 11, 2024).

additional guns and drugs in a doghouse in the backyard. A search of the doghouse revealed a Raven .25 caliber handgun, a Ruger .40 caliber handgun with magazine, and a clear plastic bag containing heroin. Berry told the officers that the guns and drugs belonged to him. PSR, ECF No. 743 ¶¶ 20, 44.

## II. ANALYSIS

### A. 18 U.S.C. § 3582(c)(2) and USSG §1B1.10

Berry seeks a sentence reduction under 18 U.S.C. § 3582(c)(2). That provision of the statute provides that the court may not modify a term of imprisonment once it has been imposed except in certain circumstances:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), ..., the court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The applicable policy statement is found at USSG § 1B1.10. In Dillon v. United States, 560 U.S. 817 (2010), the Court discussed the reach of § 3582(c)(2).

> By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the "modif[ication of] a term of imprisonment" by giving courts the power to "reduce" an otherwise final sentence in circumstances specified by the Commission. Compare 28 U.S.C. § 994(a)(2)(C) (referring to § 3582(c)(2) as a "sentence modification provisio[n]") with 18 U.S.C. § 3742(f) (authorizing courts of appeals to remand "for further sentencing" upon a finding of error) and § 3742(g) (establishing the terms of "sentencing upon remand" and describing the proceeding as a "resentenc[ing]" (capitalization omitted)). It is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered

3

> by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.

Id. at 825–26. Analysis of a § 3582(c)(2) motion requires courts to perform a two-step inquiry. "A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Id. at 826. In making the first determination, the court must determine the defendant's eligibility for a sentence modification and the extent of the modification. Id. at 827.

> Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).

Id. At step two of the inquiry, a court may consider any applicable § 3553(a) factors and determine whether, it its discretion, the reduction authorized in step one is warranted in whole or in part under the circumstances of the case. Id.

### B. Amendment 821

Berry argues that he is entitled to a sentence reduction under Amendment 821 to the guidelines. Effective November 1, 2023, the United States Sentencing Commission amended Chapter 4 of the sentencing guidelines which addresses a defendant's criminal history. See Amendment 821, USSG Supp. to App. C (Nov. 2023). The Commission made Part A and

4

Part B, Subpart 1, of Amendment 821 retroactively applicable, allowing eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2). See USSG §1B1.10(d).

Part A of Amendment 821 limits the overall criminal history impact of "status points," resulting in a reduced criminal history score. USSG §4A1.1(e). As Berry did not receive any "status points," the parties agree that Part A of Amendment 821 is not applicable to him.

The change implemented by Part B of Amendment 821 is found at USSG § 4C1.1 and provides a decrease of two levels from the offense level determined under Chapters Two and Three for a defendant who did not receive any criminal history points under Chapter Four, Part A, and whose offense of conviction did not involve specific aggravating factors. Berry argues that he is entitled to a sentence reduction under Part B of Amendment 821 and the government argues that one of the aggravating factors makes him ineligible for relief. Analysis of the issue requires the court to examine the interplay of USSG § 4C1.1 with the "safety valve" guideline, USSG § 5C1.2, and the 2-level dangerous weapon sentence increase provided in USSG § 2D1.1(b)(1).

The revised guideline at USSG § 4C1.1 sets out the following:

> (a) Adjustment.--If the defendant meets all of the following criteria:
>
> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
> (4) the offense did not result in death or serious bodily injury;

5

> (5) the instant offense of conviction is not a sex offense;
>
> (6) the defendant did not personally cause substantial financial hardship;
>
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
>
> (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
>
> (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848;
>
> decrease the offense level determined under Chapters Two and Three by 2 levels.

The parties agree that Berry is a zero-point offender and also agree that the aggravating factors described in USSG § 4C1.1(a)(2)–(6) and (8)–(10) do not apply to him. At issue is whether USSG § 4C1.1(a)(7) precludes Berry from receiving a sentence reduction.

Berry received a 2-level increase to his sentence under USSG § 2D1.1(b)(1), which provides for the increase "[i]f a dangerous weapon (including a firearm) was possessed." The application note explains the following:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

6

USSG § 2D1.1, comment. (n.11)(A)). The government argues that because Berry received the enhancement for possession of a weapon, he is precluded from receiving a sentence reduction under USSG § 4C1.1(a)(7). As set forth above, that section excludes defendants from sentence reductions who "possess[ed] … a firearm … in connection with the offense."

Berry argues that the 2-level increase does not prohibit him from receiving a sentence reduction pursuant to USSG § 4C1.1(a)(7) because the notion of "possession" under § 2D1.1(b)(1) is broader than under § 4C1.1, which in pertinent part tracks the language applicable to safety valve eligibility under § 5C1.2. In other words, Berry argues that because defendants who receive a 2-level increase nevertheless may qualify for a below-mandatory-minimum sentence under the safety valve provision in the guidelines, and because § 4C1.1 is modeled on the safety valve provision, he qualifies for the 2-level decrease called for in § 4C1.1.

To receive a sentence reduction under the safety valve, the defendant must prove by a preponderance of the evidence that he satisfies each of § 5C1.2(a)'s five criteria. United States v. Bolton, 858 F.3d 905, 913 (4th Cir. 2017) (citing United States v. Aidoo, 670 F.3d 600, 607 (4th Cir. 2012) and United States v. Thompson, 554 F.3d 450, 455 (4th Cir. 2009)). For purposes of Berry's motion, the court focuses on the criterion that the appellant must show that he "did not … possess a firearm … in connection with the offense." USSG § 5C1.2(a)(2).

In, Bolton, 858 F.3d at 914, the court explained that §§ 2D1.1(b)(1) and 5C1.2(a)(2) are not coextensive because they involve different standards of proof. In order for the 2-level § 2D1.1(b)(1) increase to apply, the government must first prove by a preponderance of the evidence that the defendant possessed the weapon in "'connection with drug activity that was

7

part of the same course of conduct or common scheme as the offense of conviction.'" Id. at 912 (quoting United States v. Manigan, 592 F.3d 621, 628–629 (4th Cir. 2010)).

> Although the Government need not prove "precisely concurrent" drug trafficking and weapon possession, United States v. Johnson, 943 F.2d 383, 386 (4th Cir. 1991), it must at least prove "a temporal and spatial relation" linking "the weapon, the drug trafficking activity, and the defendant," United States v. Clark, 415 F.3d 1234, 1241 (10th Cir. 2005) (quoting United States v. Roederer, 11 F.3d 973, 982 (10th Cir.1993)) (rejecting enhancement where defendant possessed gun 15 months after offense of conviction but admitted to drug sales two days earlier); accord United States v. Partida, 385 F.3d 546, 562 (5th Cir. 2004). In circumstances where the underlying offense is conspiracy to distribute drugs, we have held that discovery of a weapon "in a place where the conspiracy was carried out or furthered" is sufficient to link the weapon to the conspiracy. United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992).

Id. If the government meets its initial burden, a defendant may show that the link is clearly improbable "by presenting circumstantial evidence, such as the type of weapon involved and its location or accessibility." Id. (citing Manigan, 592 F.3d at 629). Courts agree that handguns are more likely to be associated with drug trafficking than long guns, and the commentary to the guideline points out that the enhancement would not be applied if the defendant had an unloaded hunting rifle in the closet at his residence. Id. (citing Manigan, 952 F.3d at 629 and § 2D1.1 comment (n.11(a)).

The Bolton court, along with at least five other circuit courts, concluded that, "[w]hereas a defendant may be unable to show that any connection between a firearm and an offense is 'clearly improbable,' the same defendant might be able to prove 'by a preponderance of the evidence' that the firearm was not connected with the offense to satisfy § 5C1.2(a)(2)." Bolton, 858 F.3d at 914. For example, in United States v. Anderson, 452 F.3d 87, 88 (1st Cir.

8

2006), during a search of a defendant's house, law enforcement officers seized several baggies of crack cocaine, a loaded semi-automatic handgun, and a ledger recording money owed to the defendant. The gun and the ledger were found in the living room of the house. At sentencing, the court found the defendant eligible for the safety valve reduction after he testified that he bought the gun for personal protection following a series of home invasions in his community. The government agreed that the safety valve applied after conceding it had no evidence that the gun was used in connection with the offense. Id. at 89. The court also applied the 2-level increase for possession of a firearm under § 2D1.1(b)(1), reasoning that the application of the safety valve, which requires the defendant to establish by a preponderance of the evidence that he did not possess the firearm in connection with the offense, does not necessarily mean that the defendant can meet the heavier burden of establishing that it was clearly improbable that the gun was used in connection with the offense. Id. at 90–91. See also United States v. Bolka, 355 F.3d 909, 914 (6th Cir. 2004) ("The 'clearly improbable' standard is a higher quantum of proof than that of the 'preponderance of the evidence' standard.") Thus, Berry is correct that a defendant who receives a sentence increase for possession of a firearm is not necessarily precluded from receiving a sentence decrease based on the safety valve.

Berry also is correct that the language in § 4C1.1(b)(7) ("the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense") tracks the language in the safety valve guideline, § 5C1.1(2)(a)(2) ("the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another

9

to do so) in connection with the offense.") In addition, the Sentencing Commission stated that in promulgating Amendment 821, it was informed in part by "existing legislation, including the congressionally established criteria for the statutory safety valve at 18 U.S.C. § 3553(f) and the recent firearms legislation set forth in the Bipartisan Safer Communities Act." USSG App. C, amend. 821 (Nov. 2023) (Reason for Amendment). Accordingly, it is reasonable to conclude that the Sentencing Commission intended that § 4C1.1(b)(7) be applied in the same manner as § 5C1.1(2)(a)(2).

However, reaching this conclusion nevertheless does not lead to the further conclusion that Berry is entitled to a sentence reduction. Berry posits that the available evidence does not show that he possessed the firearms in connection with the offense, because the PSR does not describe Berry possessing a firearm while he worked as a runner in the drug conspiracy or suggest that he conducted drug deals out of his home where the firearms were found. Rather, the PSR indicates that Berry's supplier would arrange deals via text message and then instruct runners like Berry as to how much heroin the customer wanted and where Berry was to meet the customer. Nor, he argues, does the PSR describe where in his bedroom the firearms were found, or state that the firearms were loaded or kept close at hand. He asks, rhetorically, whether the firearms were found "at the back of his closet, covered with dust," or "in a bag together with drugs and a scale." Resp., ECF No. 746. In addition, Berry argues that although the firearms were found with drugs in the doghouse, they lacked spatial proximity to him, given their relatively inaccessible location. Reply, ECF No. 748 at 2.

Berry's argument ignores the fact that he has the burden to show by a preponderance of the evidence that he did not possess the firearms in connection with the offense. The PSR

10

states that the guns, drugs, and scale were found in Berry's bedroom and in the doghouse, and that he told the officers that the items belonged to him. Berry did not object to the PSR and when a defendant fails to object to factual findings in the PSR, the government has met its burden of proving the facts by a preponderance of the evidence. United States v. McLeod, 488 F. App'x 690, 691 (4th Cir. 2012) (per curiam). The plea agreement also affirmatively stated that that Berry told officers that the guns and drugs found at his residence belonged to him. Plea Agreement, ECF No. 281 at 3. Had Berry wanted to make a showing that the guns were in the "back of his closet, covered with dust," or otherwise not connected with the offense, the time for him to do so was at sentencing.

He is now asking the court to not only guess the specific location of the guns, drugs, and scale found in his bedroom, but to find by a preponderance of the evidence that the guns were not used in connection with the drug offense. Berry also is asking the court to find by a preponderance of the evidence that he did not carry a gun with him when he delivered drugs and did not possess the guns to protect his drug supply. Given the total lack of evidence in the record to support these arguments, the court cannot make such a finding in this 18 U.S.C. § 3582(c)(2) proceeding.

His argument that the guns and drugs in the doghouse lacked spatial proximity to him is similarly unavailing, given that he told the officers that the guns and drugs belonged to him. The "spatial proximity" factor comes into play as part of the showing the government must make to meet its burden under § 2D1.1(b)(2) and was established when the parties agreed that the 2-level increase under § 2D1.1(b)(2) was warranted. Plea Agreement, ECF No. 279 at 3.

11

On the record before the court, Berry cannot show that he is entitled to a sentence reduction based on 18 U.S.C. § 3582(c)(2) and Amendment 821 to the guidelines.[2]

### III. CONCLUSION

For the reasons discussed above, the court **DENIES** Berry's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the sentencing guidelines, ECF No. 737.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: July 18, 2024

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Senior United States District Judge

---

[2] Because the court determines that Berry is not entitled to relief on the first step of the 18 U.S.C. § 8582(c)(2) inquiry, it does not address the 18 U.S.C. § 3553(a) factors.

12